UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. _____

SUITE 225, INC.

    *Plaintiff*,

v.

LANTANA INSURANCE, LTD.,

    *Defendant*.
_____/

## COMPLAINT

Suite 225, Inc. ("Suite 225") sues Lantana Insurance, Ltd ("Lantana"), and alleges:

### NATURE OF THE ACTION

1. This is an action seeking damages for statutory bad faith and attorney's fees pursuant to Fla. Stat. § 624.155, arising out of Lantana's failure to properly investigate, adjust and pay claims under an insurance policy issued to Suite 225.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 due to the parties' diversity of citizenship.

3. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest, costs and attorney's fees.

4. Venue is appropriate in this district because the events giving rise to the subject claim occurred within this judicial district.

#180019

1

## THE PARTIES

5. <u>Suite 225, Inc.</u>: At all material times, Suite 225 was a Florida corporation located and operating in Palm Beach County, Florida. Suite 225 operates a business at the premises located at 225 East Ocean Avenue, Lake Worth, Florida 33462. Suite 225 rents the premises from the landlord, Love Lantana Point, LLC. Mr. Doug Peters owns Suite 225.

6. <u>Lantana Insurance, Ltd</u>.: Upon information and belief, Lantana is a foreign corporation with a principal place of business at Renaissance House, 8-20 East Broadway, Pembroke, HM 19, Bermuda. Lantana is engaged in, amongst other things, the business of selling contracts of insurance, including in the State of Florida.

## FACTUAL ALLEGATIONS

7. <u>The Policy</u>: Lantana issued a commercial property policy to Suite 225, bearing policy no. RLE400577. A copy of the Policy is attached hereto as Exhibit A.

8. Under the terms of the Policy, Lantana insured Suite 225 against certain losses to the premises located at 225 East Ocean Ave, Lake Worth, Florida, Palm Beach County ("the Property").

9. <u>The Loss:</u> On or about January 12, 2012, while the Policy was in full force and effect, a pipe in a bathroom wall burst causing severe water damage to the Property. Water from the ruptured pipe flooded the premises, damaging the interior of the restaurant, including walls, floors, furniture, appliances, electrical systems, as well as food, wine, beer and liquor, and caused a significant business interruption loss.

10. <u>Notification to the Insurer and its Response</u>: Suite 225 promptly reported the Loss to Lantana.

11. Thereafter, Lantana assigned claim number 204-400577-09 to the Loss and hired

Michael Cudo with CJW & Associates and George Williams with RenRe Insurance to assist Lantana with its investigation and adjustment of the loss.

12. Suite 225 retained Ilya Levitis, a licensed and authorized public adjuster with Florida State Public Adjusters, Inc., to help with the adjustment of the claim with the insurance company.

13. To assist the carrier in its investigation, Suite 225 allowed Lantana unfettered access to the Property and made good faith attempts to produce all requested information and documents that Lantana claimed it needed to adjust the claim and bring the claim to conclusion.

14. Notwithstanding Suite 225's cooperation and all the documentation to the contrary, Lantana continued to undervalue the damage to Suite 225's property, as part of its calculated plan to minimize payment on Suite 225's covered damages by underestimating the loss and misapplying Policy coverages and provisions, all to Suite 225's detriment.

15. <u>The Appraisal Demands</u>:  On March 16, 2010, more than two months after the date of the loss, Suite 225 demanded appraisal from Lantana and submitted a Sworn Proof of Loss, detailed estimate of damages, monthly expense estimates, income statements, etc.

16. On March 18, 2010, Lantana denied Suite 225's appraisal request, claiming that it was premature because Suite 225 purportedly had not documented any disagreement as to the cost of repairs.

17. During the months that followed, Lantana continued its dilatory and improper claims handling tactics by requesting information that it already had in its possession and maintaining that Suite 225 must provide the requested information before appraisal could be invoked.

18. Frustrated by the insurer's inaction, on May 12, 2010, Suite 225 filed a Civil

Remedy Notice of Insurer Violation with the Department of Financial Services, putting Lantana on notice of various statutory violations. A copy of the Civil Remedy Notice is attached as Exhibit B. Lantana failed to pay the claim or correct the circumstances giving rise to the statutory violations.

19. On May 24, 2010, Mr. Doug Peters, on behalf of Suite 225, attended his first Examination Under Oath ("EUO") per Lantana's request.

20. At Lantana's request, Mr. Peters attended a second EOU on June 23, 2012.

21. After the second EUO, Suite 225 renewed its request for appraisal on June 29, 2010. Lantana again rejected the request, claiming that appraisal was premature since an acceptable proof of loss had not been provided to allow it to compare the claim with the estimates it had received from contractors. Lantana also demanded that Suite 225 submit a new proof of loss that, in its opinion, more accurately represented the scope and amount of damage.

22. On July 1, 2010, Suite 225 complied with Lantana's request and submitted a new sworn proof of loss as to each coverage under the policy (i.e., Improvements & Betterments; Business Interruption and Contents) and requested appraisal, now for a third time.

23. By letter dated July 12, 2010, Lantana again rejected Suite 225's request for appraisal. As with the previous requests, Lantana claimed that appraisal was premature because it had not received an acceptable proof of loss and supporting estimate to evaluate the claim against the estimates received from the various contractors. Notwithstanding the supposed lack of documentation, Lantana was able to adjust the loss. Lantana determined that Suite 225 was entitled to $67,902.22 for Improvements and Betterments ($55,225.93 of which it had previously determined was due and paid), $14,586.00 for Business Interpretation and nothing for Contents.

24. Lantana thus made two additional payments in the amount of $14,586.00,

representing the undisputed portion of business interruption damages, and $11,676.29 representing the undisputed amount still owed under Improvements and Betterments. No payment was made for Contents.

25. Though the documents plainly demonstrate there was a dispute over the amount of loss, Lantana refused to go to appraisal maintaining that there was no such dispute.

26. <u>The Suit to Compel Appraisal</u>: Tired of Lantana's tactics to circumvent appraisal and more than six months after the date of the loss, Suite 225 filed suit in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County (Case No. 502010CA019594XXXXMBAJ) to compel appraisal on July 28, 2010. Lantana subsequently removed the case to the United States District Court for the Southern District of Florida. *See Suite 225, Inc. v. Lantana Ins. Co. Ltd.*, Case No. 9-10-cv-81026-KLR (S.D. Fla.). An order granting Suite 225's motion to compel appraisal was entered on January 28, 2011. *Id.* [D.E. 18].

27. On June 23, 2011, an appraisal award was entered, finding that Suite 225 sustained damages in the amount of $543,927.09. The panel awarded Suite 225 $239,476.50 for building coverage, $4,562.24 for contents, $10,000.00 for food spoilage and $289,888.45 for business interruption damages.

28. Under the terms of the Policy, Lantana was required to pay the award within 30 days ($543,927.09 less the deductible of $1,000.00 less the prior payment of $67,902.22 for Improvements and Betterments and $14,586.00 for Business Interruption). The amounts due were $186,136.42 for building, contents and food spoilage and $275,302.45 for business interruption.

29. Rather than pay the full appraisal award as it was required to do under Florida law, Lantana sought to delay payment by improperly reducing the business interruption award

and claiming that a coverage dispute existed as to the period of restoration, a determination properly made by the appraisal panel.

30. Lantana unilaterally decided that it would only pay $57,886.11 for six months of business interruption rather than the full business interruption amount awarded by the panel. Lantana thus improperly withheld $217,416.34 due under the appraisal award.

31. On November 15, 2011, an order affirming the appraisal award and final judgment was entered in favor of Suite 225.

32. On or about December 9, 2011, more than 22 months after the date of the loss, Lantana finally paid the remaining amount due under the Policy.

33. <u>Consequential Losses</u>: Lantana's failure to timely adjust and settle the Loss has led to a number of unfortunate and avoidable consequences.

34. Lantana's underestimation of Suite 225's damages and stall tactics during the claim handling process prohibited Suite 225 from making repairs to the restaurant and consequently, implementation of the new restaurant concept that Suite 225 planned on adopting in December 2009.

35. Lantana knew or should have known that by failing to timely adjust the claim and issue payment for covered damages, Suite 225 would not be able make the repairs necessary to reopen the restaurant. By email dated March 19, 2010, for example, Mr. Doug Peters informed Mr. George Williams and Mr. Michael Cudo that Lantana's delay in adjusting Suite 225's claim was placing the restaurant business and his family in jeopardy.

36. As a result of Lantana's dilatory conduct, Suite 225 was unable to reopen the restaurant. Today, Suite 225 is effectively out of business. The funds finally received from Lantana are woefully inadequate to rebuild the restaurant to code, as required given the length of

time that has passed since it was in operation. The alternative, moving and reopening the restaurant, would require Suite 225 to lose the benefit of the million plus dollars spent to build out the restaurant and would likely require that similar costs be incurred in a new location.

37. Making matters worse, on or about February 2012, Suite 225's landlord, Love Lantana Point, LLC ("Love Lantana"), sued Suite 225 in state court, seeking to evict Suite 225 from the premises and damages for breach of the lease agreement between Suite 225 and Love Lantana. Love Lantana alleges, among other things, that Suite 225 breached the lease agreement by failing to continuously and uninterruptedly keep the premises open as a restaurant, as required under the lease. Love Lantana seeks damages for unpaid rent and taxes in the amounts of $69,421.72 and $2,171.72, interest, attorneys' fees and costs.

38. Had Lantana timely adjusted and settled the claim, Suite 225 would have been able to make the repairs necessary to reopen the business for operation as allegedly required under the lease agreement with Love Lantana. The suit brought by Love Lantana could have been avoided and Suite 225 would not have been forced to incur fees and costs to defend against the suit brought by Love Lantana.

39. Suite 225 has also been forced to engage the undersigned counsel to bring this action and incur fees and costs as a result.

## GENERAL ALLEGATIONS

40. Suite 225 has retained the undersigned counsel to represent it in this action, and has agreed to pay counsel a reasonable fee for their services.

41. All conditions precedent to the institution of this action have occurred, have been performed or have been waived.

42. This action under Fla. Stat. § 624.155 is ripe in that a Civil Remedy Notice of

#180019                                    7

Insurer Violation was properly filed and more than sixty days passed without Lantana paying Suite 225's claim or otherwise correcting the circumstances giving rise to the violations.

## COUNT I – STATUTORY BAD FAITH

43. Suite 225 realleges paragraphs 1 through 42 as if fully set forth herein.

44. <u>The Contract</u>: The Policy constitutes an enforceable contract under Florida law, imposing certain obligations on Lantana as described in the Policy. Lantana also owes a duty of good faith to its policyholder. Lantana conceded liability and damages under the Policy by acknowledging coverage and by making partial payments and eventual full payment post-appraisal.

45. Upon issuance of the Policy to Suite 225, Lantana became obligated to comply with the statutory duties set for in Fla. Stat. §624.155 and the portions of the Unfair Claim Settlement Practices Act (Fla. Stat. §626.9541) included therein. As stated previously, and as will be more fully developed in this case, Lantana knowingly violated those statutory duties for its own pecuniary gain, as part of its general business practice.

46. Lantana improperly resisted payment of Suite 225's claim, as part of its general business practice of refusing to fully and fairly pay claims, thereby advancing its pecuniary interests over the interests of its insured.

47. In handling the claim submitted under the Policy, Lantana continuously breached its duties to Suite 225 and engaged in unfair claim settlement practices in violation of Fla. Stat. §§624.155(1)(a), 624.155(1)(b)(1), and incorporated provisions of §626.9541, including 626.9541(1)(i)(2), 626.9541(1)(i)(3)(a-d) and 626.9541(1)(i)(3)(f-h), through the following acts and/or omissions:

  a. Flat. Stat. 624.155(1)(b)(1) – failing to attempt to settle Suite 225's claim in good

faith, when under all circumstances it could and should have done so, had it acted fairly and honestly and with due regard for its insured's interests; these acts include, but are not limited to:

- failing to properly adjust the property damage, contents and business interruption portion of Suite 225's claim, even after Suite 225 had submitted invoices, loss and profit statements, and other documents substantiating the loss

- improperly delaying appraisal of Suite 225's claim by claiming that it did not have sufficient information to evaluate the loss even though its insured had complied with Lantana's requests for information and submitted sufficient documentation for the carrier to adjust the loss

b. 626.9541(1)(i)(3)(a) – failing to adopt and implement standards for the proper investigation of claims; these acts include, but are not limited to:

- failing to adopt and implement standards to ensure objective, thorough investigations and prompt payment of claims

c. 626.9541(1)(i)(3)(b) – misrepresenting pertinent facts or insurance policy provisions relating to coverages with such frequency as to indicate a general business practice; these acts include, but are not limited to:

- misrepresenting facts and policy provisions by advising the insured that preconditions existed to a demand for appraisal when all such conditions had been met

- misapplying policy provisions for purposes of undervaluing Suite 225's claim

d. 626.9541(1)(i)(3)(c) – failing to acknowledge and act promptly upon communications with respect to claims; these acts include, but are not limited to:

- failing to respond to communications from the insured by repeatedly asking for information which was either unnecessary or already in Lantana's possession;

e. 626.9541(1)(i)(3)(d) – denying claims without conducting reasonable

investigations based upon available information; these acts include, but are not limited to:

- denying portions of the business interruption claim without a reasonable explanation

f. 626.9541(1)(i)(3)(f) – failing to provide a reasonable written explanation of the basis in the insurance Policy, in relation to the facts or applicable law, for its failure to honor its obligations under the Policy; these acts include, but are not limited to:

- refusing business interruption damages, though the period of restoration is undefined in the policy and was properly determined by the appraisal panel

g. 626.9541(1)(i)(3)(g) – failing to promptly notify the insured of any additional information necessary for the processing of a claim; these acts include, but are not limited to:

- failing to promptly request tax returns from the insured's accountant, although such information was made available to the carrier to assist in its evaluation of the business interruption claim

h. 626.9541(1)(i)(3)(h) – failing to clearly explain the nature of the requested information and the reasons why such information is necessary; these acts include, but are not limited to:

- failing to respond to communications from the insured by repeatedly asking for information which was either unnecessary or already in Lantana's possession

48. The acts complained of herein constitute Lantana's general business practices in that they (a) are expressions of, and in compliance with, standard company practices and procedures, (b) are said by Lantana to be in conformity with what it contends are standard and good faith claims practices, and, consequently or incidentally, (c) occur with such frequency as

to indicate general business practices.

49. As set forth herein, Lantana acted with reckless disregard for the rights of its insured, and/or engaged in willful, wanton, and malicious conduct towards its insured.

50. As a direct and proximate result of Lantana's actions, Suite 225 has been damaged, as more fully described above.

WHEREFORE, Suite 225, Inc. demands judgment against Lantana Insurance, Ltd. for compensatory damages, including: consequential damages arising from Lantana's claims handling delays and its breaches of its duties to Suite 225, Inc., including business losses and fees and costs incurred in defending against the eviction proceeding filed by Love Lantana against Suite 225; punitive damages pursuant to Fla. Stat. § 624.155(5); interest; attorney's fees and costs incurred in this action; and such other and further relief as this Court may deem fair and just.

### TRIAL BY JURY

Suite 225, Inc. demands trial by jury of all issues so triable.

Dated: April 17, 2012.

                Respectfully submitted,

                **VER PLOEG & LUMPKIN, P.A.**
                100 S.E. Second Street - 30th Floor
                Miami, FL  33131-2158
                Telephone:  (305) 577-3996
                Facsimile:  (305) 577-3558
                *Counsel for Suite 225, Inc.*

                By:  s/Meghan C. Moore
                    **R. Hugh Lumpkin**
                    Florida Bar No. 308196
                    rlumpkin@vpl-law.com
                    **Meghan C. Moore**
                    Florida Bar No. 0668958
                    mmoore@vpl-law.com

**Maria R. Caldera**
Florida Bar No. 58323
mcaldera@vpl-law.com

  *and*

**Hans Peter Haahr, Esq.**
hans@hhlegal.com
Haahr Law Group, PL
4159 Central Avenue
St. Petersburg, FL  33713
Telephone:  (727) 896-7777
Facsimile:   (727) 896-3999